UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VINCENT J. SMITHSON                                    CIVIL ACTION

VERSUS                                                      NO: 07-3953

TENET HEALTHSYSTEM HOSPITALS,               SECTION: R(4)
INC. D/B/A NORTHSHORE
REGIONAL MEDICAL CENTER, ET
AL.

**ORDER AND REASONS**

    Before the Court is plaintiff's Motion in Limine to Preclude Comparative Fault. For the following reasons, the Court GRANTS plaintiff's motion.

    Plaintiff moves to preclude any consideration of comparative fault, including, but not limited to any alleged comparative fault of plaintiff, plaintiff's mother, and/or any other health care providers of plaintiff. Plaintiff's cause of action against NorthShore Regional Medical Center, LLC and NorthShore Regional Medical Center, Inc. (the Court refers to the defendants collectively as "NorthShore") is based on the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (EMTALA). EMTALA is a federal statute that was enacted to prevent "patient dumping" — the practice of refusing to treat or transferring indigent or uninsured patients. *See Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319, 322 (5th Cir. 1998); *Summers v.*

1

*Baptist Medical Center Arkadelphia*, 91 F.3d 1132, 1136-37 (8th Cir. 1996). The statute is not a federal malpractice statute. *See Marshall*, 134 F.3d at 322; *Vickers v. Nash Gen. Hosp.*, 78 F.3d 139, 142 (4th Cir. 1996); *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1192 (1st Cir. 1995). The statute allows a person suffering direct harm from a hospital's EMTALA violation to recover "those damages available for personal injury under the law of the State in which the hospital is located." 42 U.S.C. § 1395dd(d)(2)(A).

The Court finds that comparative fault does not apply to plaintiff's claims. EMTALA's liability provisions do not specifically provide for comparative fault or incorporate state law comparative fault principles. Liability "is predicated on the hospital's violation of the EMTALA statute making the hospital strictly liable." *Burrows v. Redbud Community Hosp. Dist.*, 187 F.R.D. 606, 611 (N.D. Cal. 1998). *Griffith v. Mt. Carmel Medical Center* is instructive. 842 F. Supp. 1359, 1365 (D. Kan. 1994. There, the court declined to apply Kansas's comparative negligence statute to plaintiff's EMTALA claim. The court found that applying comparative fault to plaintiff's EMTALA claims would "subvert[] the plain meaning and intent of [EMTALA]" since EMTALA does not create a federal cause of action for medical negligence. 842 F. Supp. at 1364. Although EMTALA allows recovery of damages available under state law, the court

2

found that this did not "transform the liability portions of the statute into a negligence or tort-based statute."  *Id.* at 1365. Similarly here, applying state law principles of comparative fault to the liability sections of EMTALA would undermine EMTALA's strict liability regime.

Defendants argue that the language in Louisiana's comparative fault statute is broader than the statute at issue in *Griffith* and thus requires the Court to apply comparative fault to plaintiff's claim.  *See* Louisiana Civil Code art. 2323 ("In any cause of action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined.")  The Court does not find the argument persuasive. Article 2323 concerns the *liability* of the parties for damages, whereas state law applies in EMTALA claims only to determine the amount and type of damages available.  Thus, application of article 2323 would improperly undermine the EMTALA liability regime.

The Louisiana Supreme Court has recognized the danger in applying requirements of Louisiana tort law to EMTALA claims.  In *Spradlin v. Acadia-St. Landry Medical Found.*, 758 So.2d 116, 123 (La. 2000), the court held that Louisiana's pre-suit medical review panel requirement did not apply to EMTALA claims.  The court focused on the differing purposes of medical malpractice

3

and EMTALA claims, finding that because of this difference, the procedural requirement of the Louisiana Medical Malpractice Act, La. Rev. Stat. 40 § 1299.47, directly conflicts with EMTALA. *Id*. Similarly here, Louisiana's comparative fault regime should not apply.

Further, applying comparative fault principles to EMTALA would undermine the purpose of the statute in discouraging hospitals from patient dumping. For instance, in this case, defendant seeks to allocate comparative fault between the hospital and the plaintiff. Defendants assert that plaintiff's damages must be reduced in proportion to the extent that his damages were caused by his failure to wear protective eyewear while weedeating and his decision to transfer to transfer to the Medical Center of Louisiana at New Orleans. EMTALA was designed to govern the actions of a hospital after a patient arrives at an emergency room for treatment — the statute is not concerned with how or why the patient was sick or injured. Any discussion of the actions a patient could have taken to prevent the injury before reaching the hospital would stray too far from EMTALA's statutory purpose. The hospital cannot be held liable for causing plaintiff's original injury. Its liability extends only to the extent that its violation of EMTALA caused the deterioration in plaintiff's condition.

Additionally, plaintiff's alleged request to be transferred

to Charity Hospital, while relevant, will already be considered pursuant to 42 U.S.C. § 1395dd(c).  If the trier of fact finds that plaintiff's request to transfer was under circumstances that satisfied § 1395dd(c), defendants will not be liable for any failure to give plaintiff stabilizing treatment.  If the trier of fact finds that plaintiff's request does not meet the criteria of § 1395dd(c), then the request is invalid and cannot serve as a defense.  As such, the statute has contemplated the role a patient's request to transfer will have in the liability scheme of the statute, and any application of comparative fault in this context is inappropriate.

Further, even if comparative fault could apply in some EMTALA contexts, there is no evidentiary basis to instruct a jury on comparative fault here.  In applying comparative fault to divide the fault of the hospital and the doctors, the jury would have to consider whether the doctors committed medical malpractice.  To support a finding that the doctors were at fault, there must be expert testimony to establish the applicable standard of care and whether or not the standard was breached.  *See Thomas v. Willis-Knighton Medical Center*, 981 So.2d 807, 811 (La. Ct. App. 2008) (finding that "[e]xpert testimony is generally required" in medical malpractice actions).  No party has proffered experts to testify that the physicians violated the standard of care.  Further, defendants have consistently

5

maintained that this is not a medical malpractice action and have moved to prohibit the introduction of evidence regarding the applicable medical standard of care. (R. Doc. 108). The Court granted their motion. As such, there will be no evidentiary basis on which to base a comparative fault instruction with respect to the physicians.

Further, plaintiff is not suing the hospital for causing his initial eye injury, only for the deterioration in his condition. Evidence that plaintiff did not wear goggles while operating the weedeater is not probative of whether plaintiff caused or contributed to this deterioration. As to plaintiff's alleged request to transfer, that issue is dealt with in EMTALA, as discussed above.

Accordingly, the Court GRANTS plaintiff's Motion in Limine.

New Orleans, Louisiana, this 4th day of August 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE