MINUTE ENTRY
ROBY, M. J.
July 30, 2008

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VINCENT J. SMITHSON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-03953** |
| **NORTHSHORE REGIONAL MEDICAL CENTER, INC. d/b/a Northshore Regional Medical Center, ET AL.** | **SECTION: "R" (4)** |

### ORDER

Before the Court is **Defendants' Motion to Set Expert Witness Fee or, in the Alternative, to Strike Expert Witness (R. Doc. 94)**, filed by the Defendants. In response, the Plaintiff, Vincent J. Smithson ("Smithson") filed a Memorandum in Opposition to Defendants' Motion to Set Expert Witness Fee, or in the Alternative, to Strike Expert Witness (R. Doc. 113). Thereafter, Smithson filed a **Motion for Leave of Court to File Exhibit to Plaintiff's Memorandum in Opposition to Defendants' Motion to Set Expert Witness Fee or, in the Alternative, to Strike Expert Witness with Incorporated Memorandum (R. Doc. 115)**. The Court grants Smithson's motion for leave, and considers the attached memorandum in its opinion below.

The motion was heard on July 30, 2008 with oral argument. On the date and time of the hearing, Sherif K. Sakla and Stephanie C. Reuther appeared on behalf of Smithson, and Jacob K. Best appeared on behalf of the Defendants. The hearing was recorded by Cindy Usner, at 504-589-

MJSTAR: 00:13

7723.

**I.       Background**

Smithson brings this action under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. §1395dd, *et seq*. ("EMTALA") against the Defendants due to the loss of his eye and other associated injuries and damages. (R. Doc. 1.) Smithson alleges that on or about August 4, 2008, at approximately 7:00 a.m. or 7:05 a.m., a foreign object entered his left eye while he was using a weedeater on the lawn of the Northshore Regional Medical Center ("Northshore"), where he worked. (R. Doc. 1.) He asserts that shortly thereafter, at 7:15 a.m., he sought treatment at the emergency room at Northshore. (R. Doc. 1.)

Smithson contends that Dr. Terrell Hemelt ("Dr. Hemelt"), an on-call ophthalmology consultant at Northshore, was called to examine and treat Smithson at approximately 7:30 a.m. (R. Doc. 1.) However, Dr. Hemelt allegedly did not see Smithson until approximately 12:00 p.m. (R. Doc. 1.) At that time, Dr. Hemelt purportedly recommended surgery for "urgent repair." (R. Doc. 1.) However, Smithson maintains, that rather than perform the surgery, Dr. Hemelt first inquired about Smithson's method of payment and insurance status, and indicated while he could surgically save his eye, the hospital bill would be unaffordable. (R. Doc. 1.) Thereafter, on that same day, Smithson avers that he was seen by the ophthalmology team at the Medical Center of Louisiana at New Orleans ("Medical Center of LA") at approximately 7:30 p.m., and was not taken to surgery until 10:30 p.m. (R. Doc. 1.)

As a result of his belated treatment, Smithson contends that the next day, on August 5, 2005, his left eye had become violently infected and had to be removed. (R. Doc. 1.) Smithson contends that he has continued to suffer from severe pain after the removal of his eye. (R. Doc. 1.)

In the subject action, Smithson alleges that he was not seen in a reasonable time after arrival at Northshore and the Medical Center of LA, in violation of EMTALA, which requires that hospitals appropriately medically screen patients upon entry to determine whether the patient has a emergency medical condition and stabilize patients before any transfer. (R. Doc. 1.)  Therefore, Smithson seeks damages under EMTALA for the actions or lack thereof, by Northshore and the Medical Center of LA.

Smithson designated Richard A. Bucci, M.D. ("Dr. Bucci"), a board-certified physician in emergency medicine as a testifying expert in this matter.  Smithson asserts that he provided the Defendants with Dr. Bucci's expert report on May 23, 2008, and sometime in early July 2008, the Defendants requested to depose Dr. Bucci.  On July 10, 2008, counsel for Smithson responded to counsel for the Defendants, indicating that Dr. Bucci was available to be deposed on July 21, 2008, and that he charged a deposition fee of $500.00 per hour, for four hours minimum. (R. Doc. 113-3, Ex. B.)  Therefore, Dr. Bucci's total minimum fee was $2,000.00. (R. Doc. 113-3, Ex. B.)  On July 14, 2008, counsel for the Defendants objected to Dr. Bucci's fee in an email, indicating that while Defendants were willing to pay for two hours, the minimum charge of $2,000.00 was excessive. (R. Doc. 113-4, Ex. C.)  On July 17, 2008, counsel for Smithson replied, maintaining that the Defendants had previously paid an expert at a minimum of four hours in another matter.

Ultimately, Dr. Bucci made himself available to be deposed on Monday, July 21, 2008 at 1:00 p.m. in Mobile, Alabama.  Both of the parties traveled to Mobile to take the deposition.  However, due to the continuing dispute regarding expert fees, the parties did not go through with the deposition.  The deposition transcript reflects that the Defendants only authorized their counsel to tender a check for $1,000.00, and Dr. Bucci refused to proceed with the deposition. (R. Doc. 115-

3, Ex. E.) The deposition transcript also reveals that the Defendants attempted to contact the presiding U.S. District Court Judge Sarah S. Vance ("Judge Vance") and the undersigned magistrate judge on the day of the deposition, for "guidance" as to how to resolve the issue. However, their procedurally deficient efforts were to no avail.

In the subject motion, the Defendants maintain that Dr. Bucci's deposition will not exceed an hour to an hour and a half, and therefore, they will pay Dr. Bucci a minimum of $1,000.00 for two hours, and his standard rate of $500.00 an hour for every additional hour. However, they refuse to pay the minimum $2,000.00 fee because it is excessive and unreasonable. The Defendants stress that trial is imminent and the Plaintiffs are acting uncooperatively to hinder them from taking Dr. Bucci's deposition. The Defendants contend that they are not responsible for Dr. Bucci's work schedule and do not require him to be deposed during the daytime, such that he must take leave of absence from his employment. Furthermore, the Defendants maintain that if Dr. Bucci continues to refuse to be deposed for a minimum of $1,000.00, then he should be stricken from the witness list, and be prohibited from appearing and testifying in the trial.

In opposition, Smithson argues that he maintained in his discussions and emails with Defendants that Dr. Bucci charged a four hour minimum because he needed to clear his schedule for the entire afternoon and forfeit his income from treating patients from his eight-hour work shift. Furthermore, Smithson asserts though Defendants initially objected in two emails, the Defendants allowed the deposition to proceed to the scheduled date, leading Smithson to believe that the Defendants were willing to pay Dr. Bucci's standard fee. Specifically, Smithson alleges that the Defendants threatened to file a motion, however, they did not do so prior to the deposition. Therefore, Smithson contends that the Defendants' lack of any objections suggested that they

implicitly agreed with Dr. Bucci's required fee.

However, Smithson notes that on the day of the deposition, the Defendants refused to pay Dr. Bucci his required deposition fee, and the deposition was cancelled, despite the fact that counsel had both traveled to Mobile, Alabama to take the deposition. Smithson contends that in the past, the Defendants have paid a four hour minimum for a previous expert.

The Court notes that trial is scheduled to commence Monday, August 4, 2008. (R. Doc. 36.) Based on these considerations, the Court examines the reasonableness of Dr. Bucci's fee below.

## II.  Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(4) provides that:

> Unless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (B); and (ii) for discovery under (B), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's fees and opinions.

Courts look to seven factors to determine whether a fee is reasonable, including: (1) the witness's area of expertise, (2) the education and training required to provide the expert insight sought, (3) the prevailing rates of other comparably respected available experts, (4) the nature, quality, and complexity of the discovery responses provided, (5) the fee actually being charged to the party who retained the expert, (6) fees traditionally charged by the expert on related matters, and (7) other factors of assistance. *Williams v. M-I, LLC*, Civ. A. 05-0404, 2006 WL 2604672, at *1 (W.D. La. Sept. 8, 2006).

## III.  Analysis

Here, the Defendants argue that they should only be required to pay Dr. Bucci for the time actually expended during the deposition, and no more. In opposition, Smithson contends that Dr.

Bucci is entitled to his minimum fee of $2,000.00 because he is a board certified emergency physician, who routinely charges his standard deposition fee of $500.00 hour, with a $2,000.00 minimum. Smithson contends that other experts charge higher fees for depositions, and Dr. Bucci's deposition requires significant preparation time and will relate to complicated issues in this matter regarding EMTALA. As for striking Dr. Bucci from the witness list, Smithson contends that the Defendants delayed until July 2008 to schedule Dr. Bucci's deposition, even though Dr. Bucci was identified as an expert on May 23, 2008. Therefore, Smithson maintains that he has acted appropriately in naming Dr. Bucci as an expert, such that Dr. Bucci is both entitled to his requested deposition fee and should not be stricken from the expert witness list.

The Court looks to factors as set forth in the case law to determine whether a $2,000.00 minimum fee is reasonable for Dr. Bucci's expert rate. First, as to Dr. Bucci's qualifications, the Court notes that Dr. Bucci is board-certified in emergency medicine, and therefore, his area of expertise is aligned with the subject of the lawsuit, which is Smithson's emergency medical treatment. Second, the Court notes that Dr. Bucci performed his residency and rotation in emergency medicine, and worked in emergency medicine throughout his career. (R. Doc. 94-4, Ex. B.) Currently, he is not only a staff physician, but also the Chairman of the Emergency Medicine Department at Singing River Hospital, in Pascagoula, Mississippi. (R. Doc. 94-4, Ex. B.) Therefore, his education and training in emergency medicine provide the expert insight sought here.

As for the third and fourth factors, the parties did not provide the Court with the prevailing rates of other comparably respected available experts or the nature, quality, and complexity of the discovery responses to be provided by Dr. Bucci, and therefore, the Court finds that these elements do not speak to the reasonableness of Dr. Bucci's requested fee. However, the Court notes in

passing that Smithson emphasized Dr. Bucci's qualifications in emergency medicine and his understanding of EMTALA, and thus, presumably, the quality and complexity of his deposition testimony would be strong.

Furthermore, Dr. Bucci charges $500.00 per hour and requires payment for a minimum of four hours, despite the actual duration of his deposition. Smithson maintains that Dr. Bucci's rate and minimum charge is evenhandedly billed for all of Dr. Bucci's depositions. The Defendants offer no evidence to the contrary. In light of Smithson's assertions, the Court concludes that the fifth and sixth factors also weigh in favor of finding Dr. Bucci's fee as reasonable because (1) Dr. Bucci would charge the same hourly rate and minimum fee to Smithson, the party who retained Dr. Bucci as an expert and (2) Dr. Bucci traditionally charges this fee on related matters.

Thus far, the Court notes that overall, the factors governing the reasonableness of expert's fees do not conclusively weigh in favor of finding a $2,000.00 fee for two hours as reasonable. While Smithson provides evidence that Dr. Bucci is qualified as an expert and generally charges $2,000.00 for four minimum hours of work, he failed to provide evidence of prevailing rates charged by similar experts or that Dr. Bucci has charged $2,000.00 for two hours of deposition testimony in another, similar case. Therefore, the Court considers other information, to guide its ruling.

The Court first notes that the reasonableness of an expert's rate is not determined by the amount of time that an expert must take off at work, but the time at which he or she is actually deposed. Here, Dr. Bucci voluntarily made himself available and opened his schedule for a deposition on his own accord. Dr. Bucci could have scheduled his deposition for another date and time, such that he would not have to take off time from work and incur additional or unnecessary expenses.

However, at the hearing, Smithson asserted that Dr. Bucci scheduled the deposition on a work day to accommodate to the Defendants' late request for Dr. Bucci's deposition in July, which was made less than a month before trial and over a month after the discovery deadline, on June 6, 2008.  (R. Docs. 36, 77.)   Therefore, because the limited time in which to take Dr. Bucci's deposition, Dr. Bucci scheduled the deposition to assist the Defendants.  Despite this, the Defendants still delayed addressing the issue of Dr. Bucci's fees until the eve of trial, which is scheduled to commence on Monday, August 4, 2008.  On the day of the deposition, the Defendants telephoned the Court, requesting the Court to adjudicate or advise the parties as to Dr. Bucci's deposition fees, even though the discovery deadlines in Judge Vance's Scheduling Order (R. Doc. 36) had long since lapsed.  At that time, both Judge Vance's Chambers and this Court refused to intervene to resolve the discovery dispute because the procedurally appropriate means by which to address this dispute was motion practice, and not an informal telephone call.

The Defendants should have filed a procedurally sufficient motion prior to Dr. Bucci's deposition to set Dr. Bucci's expert rate, especially given the urgent need to take his deposition prior to the impending trial.  Rather, the Defendants effectively forced all parties to travel to Mobile, Alabama to test Dr. Bucci's assertions, even though the parties already expressed discord regarding Dr. Bucci's fees.  Finally, the Defendants do not address whether they will pay for Dr. Bucci's expenses in preparing for the deposition, but only indicate that they will pay for only two hours of his testimony, plus any additional time beyond those two hours.  *See* Fed. R. Civ. P. 26(b)(4); *In re Shell Oil Co.*, Civ. A. 88-1935, 1992 WL 31867, at *1 (E.D. La. Feb. 13, 1992) (holding that a deposition party shall pay an expert reasonably hourly fee for travel and for time spent gathering responsive documents).  Therefore, given the procedural delay and deficiencies of the Defendants'

request, the Court concludes that Dr. Bucci's requested fee is reasonable under these circumstances.

Ultimately, the Court does not reach a determination that $2,000.00 is a reasonable fee for approximately two hours of deposition testimony in all such cases, but that provided the circumstances here, Dr. Bucci is entitled to his requested fee of $2,000.00. Therefore, the Court need not address the parties' arguments regarding striking Dr. Bucci from Smithson's witness list.

**IV.** **Conclusion**

Accordingly,

**IT IS ORDERED** that the **Defendants' Motion to Set Expert Witness Fee or, in the Alternative, to Strike Expert Witness (R. Doc. 94)** is **DENIED**.

**IT IS FURTHER ORDERED** that Smithson's **Motion for Leave of Court to File Exhibit to Plaintiff's Memorandum in Opposition to Defendants' Motion to Set Expert Witness Fee or, in the Alternative, to Strike Expert Witness with Incorporated Memorandum (R. Doc. 115)** is **GRANTED**, and considered in the opinion above.

New Orleans, Louisiana, this <u>4th</u> day of August 2008

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**